S. A. HOSTETTER ET AL., EXRS. v. STATE OF OHIO.

1. APPLICABILITY OF INHERITANCE TAX LAW (LAN. R. L. 4053 ET SEQ.; 97 O. L. 398) DEPENDS ON WHEN ESTATE VESTED, ETC.

Whether the inheritance tax law (Lan. R. L. 4053 et seq.; 97 O. L. 398) applies to the undistributed estate of a person who died testate prior to its enactment, depends upon when said estate vested under the provision of the will. Hence, where a will provides that "on final settlement of my estate (which was to be deferred until after the death of the testator's widow) all the rest and residue thereof to be divided and distributed and paid to my heirs at law in the same proportion that the same would have been paid to them if I had died without a will," the words "heirs at law" mean the heirs at law at the time of the distribution; and where the distribution is thereby delayed for many years, and an inheritance tax law is enacted in the meantime, the shares of the heirs at law are subject to said tax.

2. INHERITANCE TAX LAW (LAN. R. L. 4053 ET. SEQ.; 97 O. L. 398) NOT A TAKING OF PROPERTY WITHOUT DUE PROCESS OF LAW.

The power vested in the probate court by Sec. 9 (Lan. R. L. 4061) of the inheritance tax law to order an appraisement of a decedent's estate for the purpose of fixing the tax, without giving notice to the executor or next of kin, does not render said act unconstitutional in that it takes property without due process of law, because Secs. 8 and 10 (Lan. R. L. 4060 and 4062) of said act provides for a review of all

matters before the probate court, and also for an appeal, and, together with Lan. R. L. 9387 (R. S. 5848), provides "a day in court" for all who may consider themselves aggrieved.

ERROR to Darke common pleas court.

**Anderson, Bowman & Anderson,** for plaintiff in error:  ·

The court in construing this act, should give it a strict construction in favor of the estate.  27 Am. & Eng. Enc. Law (2 ed.) 340, and cases cited under note 3.

This law was not in force at the time of testator's death.  The law in force at the time of his death should control and govern the disposition of his estate.  This is well settled.  27 Am. & Eng. Enc. Law (2 ed.) 341; Howe v. Howe, 179 Mass. 546 [61 N. E. Rep. 225; 55 L. R. A. 626]; Provident Hospital & Training Sch. Assn. v. People, 198 Ill. 495 [64 N. E. Rep. 1031].

The act in specific terms was intended to act prospectively.  There is nothing in its terms that would indicate that it was to have a retrospective operation.  In order to operate upon this estate, the act would have to have a retrospective operation.  To so operate, the act should so declare in specific terms.  Howe v. Howe, 179 Mass. 546 [61 N. E. Rep. 225; 55 L. R. A. 626]; Provident Hospital & Training Sch. Assn. v. People, 198 Ill. 495 [64 N. E. Rep. 1031]; Lambard, Appeal of, 88 Me. 587 [34 Atl. Rep. 530].

If said act was intended to have a retrospective operation, it is violative of Sec. 28, Art. 2 of the constitution.  The estate and interest of the beneficiaries vested at the time of the death of the testator.  They had such an estate and interest therein, that they could have assigned the same, or the same could have been reached by their creditors.  The law favors the immediate vesting of estates in remainder, although the possession may be postponed until some future contingency.  Linton v. Laycock, 33 Ohio St. 128; Loring v. Carnes, 148 Mass. 223 [19 N. E. Rep. 343]; Doe v. Considine, 4 O. F. D. 94; [73 U. S. (6 Wall.) 485; 18 L. Ed. 869]; Field v. Peoples, 180 Ill. 376, 381 [54 N. E. Rep. 304]; Scott v. West, 63 Wis. 566 [24 N. W. Rep. 161; 25 N. W. Rep. 18]; Hawkins, Wills 71, 72; 2 Jarman, Wills 707, 710; Barkman v. Hain, 5 Dec. 474 (5 N. P. 508); Moore v. Herancourt, 8 Circ. Dec. 826 (10 R. 420); Union Savings & Tr. Co. v. Darr, 10 Circ. Dec. 554 (19 R. 497); Bolton v. Bank, 50 Ohio St. 290 [33 N. E. Rep. 1115]; Richey v. Johnson, 30 Ohio St. 288.

The will fixes the testator's death as the landmark, and as the date or time to ascertain the beneficiaries.  In other words, the beneficiaries under his will are to be determined as of that date.

The beneficiaries named in the will of said deceased testator having a vested interest in said estate at the time of the passage of said act, the same cannot be affected thereby. Rairden v. Holden, 15 Ohio St. 207; Hamilton Co. (Comrs.) v. Rosche, 50 Ohio St. 103 [33 N. E. Rep. 408; 40 Am. St. Rep. 653]; Jenney v. Gray, 5 Ohio St. 45, 48; Quigley v. Graham, 18 Ohio St. 42, 45; Gilpin v. Williams, 25 Ohio St. 283, 296, 297; Kent v. Bentley, 6 Circ. Dec. 457 (10 R. 132, 137); Caruthers v. Tarvin, 8 Dec. Re. 344 (7 Bull. 127).

Section 9 of the act giving the probate court authority to cause an appraisement of the property at its actual value, for the purpose of ascertaining the amount of the succession tax without making provision for notice to the executors, or to the next of kin of the estate, confers an arbitrary power upon the probate court, and the appraisers appointed by him. This would render the act unconstitutional. Ferry v. Campbell, 110 Iowa 290 [81 N. W. Rep. 604; 50 L. R. A. 92].

The increase in the estate is not covered by the provision of this act. Vassar, In re, 127 N. Y. 1 [27 N. E. Rep. 394].

**Robeson & Yount,** for defendant in error:

The property now in the hands of the executors, to be by them distributed either by deed or otherwise, is subject to the direct inheritance tax under the act of April 25, 1904 (97 O. L. 398); Carpenter v. Commonwealth, 58 U. S. (17 How.) 456 [15 L. Ed. 127; Orr v. Gilman, 183 U. S. 278 [22 Sup. Ct. Rep. 213; 46 L. Ed. 196]; Ferry v. Campbell, 110 Iowa 290 [81 N. W. Rep. 604; 50 L. R. A. 92]; Zickler v. Bank & Tr. Co. 104 Tenn. 277 [57 S. W. Rep. 341]; State v. Funnell, 20 Mont. 299 [51 Pac. Rep. 267; 39 L. R. A. 170]; Wallace v. Myers, 38 Fed. Rep. 184; State v. Ferris, 53 Ohio St. 314 [41 N. E. Rep. 579; 30 L. R. A. 218].

DUSTIN, J.

This case was submitted to the common pleas court upon an agreed statement of facts, to determine whether or not plaintiffs in error were liable to pay an inheritance tax on certain property devised and bequeathed by the will of David Eury, who died some twenty years ago, but whose estate was for the most part, undistributed and in the hands of his executors at the time of the passage of the inheritance tax law, April 25, 1904. (Lan. R. L. 4053 *et seq.*; 97 O. L. 398.)

AGREED STATEMENT OF FACTS.

Under the above and foregoing agreement of submission, the following facts are agreed to:

1.   That on April —, 1884, one, David Eury, resident of Darke county, Ohio, died, leaving a will whereby he appointed S. A. Hostetter and David W. Smith his executors thereof; which will was, on May 12, 1884, duly admitted to probate and record in the probate court of said Darke county, Ohio, and letters testamentary were, on May 14, 1884, by said court duly issued to said S. A. Hostetter and David W. Smith, who thereupon duly qualified and are now, and have been ever since their said appointment and qualification, engaged in the discharge of their duties as such executors under said last will and testament of said deceased.

2.   That said last will and testament of said David Eury, deceased, so admitted to probate and record, is in the words and figures following, to wit:

"I, David Eury, of the township of York, in the county of Darke, and state of Ohio, do hereby make, ordain and publish this my last will and testament in manner and form following, that is to say:

"First.   I give and devise to my executors hereinafter named, in trust, all and singular the lands and real estate of which I may be the owner at the time of my decease, and is not herein specifically otherwise devised; and also in their care all my personal estate not herein otherwise disposed of, to be by them, and the survivors of them, held to and for the uses, purposes and trusts hereinafter set forth, viz:  Out of my personal estate which may come to their hands, to pay my just debts, funeral expenses and the costs and expenses of the settlement of my said estate.   I authorize them to allow my wife, Sarah Eury, during her natural life, to have, hold, possess and enjoy the following described real estate, viz:   The southwest quarter of section eight (8), the northwest quarter of section seventeen (17), of township eleven (11), range three (3) east; also the east half of the southeast quarter of section seventeen (17), as aforesaid, township eleven (11), range three (3) east,—she to enjoy during her life the issues, rents and profits of said lands, to be chargeable with all state, county, township and other taxes and assessments thereon, except extraordinary assessments for ditch and road improvements;—she is not to waste or destroy timber or anything off of the lands, but to keep it in ordinary repair.

"At decease of my said wife, my executors to convey to the then surviving children of Andrew Kershner, deceased, and to the issue of such of his children as may then be dead, as the parent would have if living, the undivided one-half of the southwest quarter of section eight (8), township eleven (11), range three (3) east in York township,

Darke county, Ohio, in fee simple in equal rights and in like manner and time to convey to Sarah Elizabeth Richards for life, and after her death to her children in fee simple, the undivided half of the southwest quarter of section eight (8), township eleven (11), range three (3) east in York township, Darke county, Ohio; if any of her children then be dead and left issue, then living they have the share their parent would be entitled if living.

"All other lands which I may own at the time of my death, and not herein specified otherwise, I authorize my executors to sell and make deeds of conveyance to purchasers, and after the death of my wife to sell all lands which then belong to my estate, except the southwest quarter of section eight (8), township eleven (11), range three (3) east, which is otherwise specified.

"My executors shall put all moneys that come to their hands in safe loans, secured by real estate, my wife to have all such interest she needs after the taxes be paid.

"My wife to have all household and kitchen furniture, stock and utensils without appraisement.

"After the death of my wife, out of the moneys in my executors' hands arising from my estate, I direct my said executors to pay the following specific legacies, viz:   To each of the children of Delila Johnson, or afterwards Delila Lime, the sum of six hundred dollars ($600). If any of her five children should have died before this and left children, they to have the share their parent would have been entitled to if living. To Lidia Margaret Miller, daughter of Sarah E. Bertram, three hundred dollars ($300); and to Sarah  E.  Bertram  twelve  hundred  dollars ($1,200); and to David W. Smith, fifteen hundred dollars ($1,500); and to each of the living children and to the issue of any that may be dead of my brothers, Jesse Eury and Noah Eury, fifteen hundred dollars ($1,500).   And on final settlement of my estate all the rest and residue thereof to be divided and distributed and paid to my heirs-at-law in the same proportion that the same would have been paid to them if I had died without a will.  All of the  former legacies  and  specific  and residuary devises to be paid after the death of my wife.

"I hereby nominate and appoint David W. Smith  and  S.  A. Hostetter, executors of this will, and hereby fully empower them and the survivors of them, to adjust and settle all and any of my business, controversies that may arise effecting my estate; all claims due to or from the same as fully as I might do if I was living, and also to execute any and all deeds and conveyances requisite and proper and all other instruments whatever which may be required to fully execute and carry

into effect the foregoing will, and I hereby revoke and annul all former wills by me made.

"In faith whereof, I have hereunto set my hand and seal on this, the fifteenth day of June, 1883.

"DAVID EURY,        (Seal)"

"Executed by the testator as for his last will and testament in our presence and by us subscribed as attesting witnesses in his presence.

"S. S. COLLINS,<br>"JOHN COPPESS."

Record of Wills, "D," page 471.

3. That said Sarah Eury, widow of said David Eury, deceased, died on July 16, A. D. 1904.

4. That after the payment of all debts of said deceased, funeral expenses, those of last sickness, expenses of administration and the cost of a family monument, the net personal estate left by said deceased amounted at the time of his death, to about thirty-three thousand dollars ($33,000).

5. That pursuant to said last will and testament of said deceased, said executors thereof have held, invested, managed and controlled said personal estate so left by said deceased, and the same has increased under their management, and amounted on July 16, A. D. 1904, the date of the death of said widow of said deceased, to about eighty thousand dollars ($80,000); and which sum is now held by said executors for distribution under said last will and testament of said deceased.

6. That the real estate of said deceased, which said executors are required to sell, and to distribute, the proceeds thereof under said last will and testament, is of the value of about eighteen thousand dollars ($18,000).

7. That one of the legatees and devisees under said last will and testament, is entitled to receive about fifteen thousand dollars ($15,000) of said moneys of said estate so to be distributed by said executors, and that several more of said legatees and devisees' under said last will and testament will each receive considerable more than three thousand dollars ($3,000) on such distribution.

8. That said southwest quarter of section eight (8), township eleven (11), of range three (3) east in York township, Darke county, Ohio, specifically devised in said last will and testament is of the value of about seventy-five hundred dollars ($7,500).

9. That said David Eury died leaving no children or their descendants him surviving; that said legatees and beneficiaries under said will are collateral kindred of said decedent.

Upon said foregoing facts, the parties above named, pray the judgment of the court whether said estate for distribution in the hands of said executors, so derived as aforesaid, is subject to the direct inheritance tax under the act of the general assembly of the state of Ohio, passed and approved April 25, 1904, and entitled "An act to impose a tax upon the right to succeed to, or inherit, property." Laning R. L. 4053 *et. seq.* (97 O. L. 398-400).

The common pleas court found that the act applies to the personal estate in the hands of the executors for distribution, and to the proceeds of real estate to be sold by them under the provisions of the will, but that it does not apply to the real estate specifically devised by said will.

The executors excepted and prosecute error to so much of the decree as applies to the undistributed personalty and unsold realty; and the state files a cross petition in error as to so much of the decree as applies to the specifically devised realty.

It is claimed on behalf of the executors:

First. That the law in force at the time of the death of Eury applies.

Second. That the act in question contains nothing to indicate that a retrospective operation was intended.

Third. That if so intended, it would violate Sec. 28, Art. 2 of the constitution of Ohio, which provides that:

"The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts."

Fourth. That the beneficiaries named in the will had a vested interest in the estate at the time of the passage of the act in question, and cannot be affected thereby.

Finally, it is claimed that the act is unconstitutional because it gives the probate court authority to cause an appraisement of the property at its actual value without providing for notice to the executors or next of kin.

It is first necessary to construe the will to determine when the estate vested in the beneficiaries.

The intention of the testator was, we think, manifestly, to keep the estate intact until his widow's death; and he therefore devised and bequeathed everything to his executors excepting household goods and furniture, etc., thereby creating in them a trust to continue during the life of his widow and until final distribution.

The executors proceeded upon that view and have rendered a good account of their stewardship, the personal estate increasing from $33,000 to $80,000.

This large sum is to be distributed among certain beneficiaries who could not with definiteness be ascertained or named, prior to the death of the testator's widow.

Under such circumstances could the several interests of the legatees be said to have vested prior to that time? A person is said to be vested with an estate when he has an immediate fixed right therein, of present or future enjoyment.

Now, the language of the will is:

"After the death of my wife, out of the moneys in my executors' hands arising from my estate I direct my said executors to pay the following specific legacies." (Then follow certain legacies too small to be considered in applying the inheritance tax.)

"And on final settlement of my estate all the rest and residue thereof to be divided and distributed and paid to my heirs-at-law in the same proportion that the same would have been paid to them if I had died without a will. All of the former legacies both specific and residuary to be paid after the death of my wife."

We think the heirs-at-law meant by the above are the *then* heirs-at-law, viz., at the time of the authorized distribution.

This view is not in conflict with Linton v. Laycock, 33 Ohio St. 128, where in the fifth syllabus the court recognizes the "rule vesting legacies —bequeathed only by a direction to pay or divide—at the time fixed for the payment or division."

The case of Richey v. Johnson, 30 Ohio St. 288, seems to be in point. It was there held that: "The gift implied in the direction to divide the proceeds between the designated parties, is a gift of personalty; but as the fund could not be raised till the death of the widow, and was to be divided between persons then living, the interest of the legatees therein remained contingent till that time."

See also Williams, Executors 1232 and cases there noted.

The authorities cited in behalf of the executors are either cases where the interest to vest at the death of the testator is clear, or where the property devised was real estate, in which it is conceded in Linton v. Laycock, *supra,* that the rule above announced does not apply.

For the last mentioned reason, we affirm the holding of the common pleas court as to the specifically devised real estate.

As to the point that the law is unconstitutional because Sec. 9 thereof gives the probate court power to order an appraisement (for the purpose of fixing the tax) without giving notice to executors or next of kin, we think this is not taking property without due process of law, because Secs. 8 and 10 provide for a review of all matters before the probate

court and for appeal. These, together with Lan. R. L. 9387 (R. S. 5848), give ample remedy, and provide "a day in court" for all who may consider themselves aggrieved.

With these views as to the time of the vesting of the legacies, and the provision of the act in question as to appraisement, it is not necessary to consider the other questions raised in the case.

The decree of the common pleas court will therefore be affirmed.

**Sullivan** and **Wilson, JJ.**, concur.